364 So.2d 1348 (1978)
Judy BADEAUX, on her Behalf and on Behalf of the Estate of her Son, Christopher Scott Knight
v.
EAST JEFFERSON GENERAL HOSPITAL et al.
No. 9642.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1978.
*1349 Charles S. Meriwether, Metairie, for plaintiff-appellant.
McGlinchey, Stafford, Mintz & Hoffman, C. G. Norwood, Jr., New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA and BEER, JJ.
GULOTTA, Judge.
In this medical malpractice suit, plaintiff appeals from the dismissal, by summary judgment, of her claim against the hospital for the wrongful death of her minor child.[1] We affirm.
The suit was directed against the hospital and the two physicians (the emergency room physician and the family pediatrician) who attended the child on the night the child was admitted to the hospital. The claims against the physicians are pending.
At approximately 10:20 p. m. on the night of February 4, 1975, plaintiff brought the five year old minor child to the emergency room of the East Jefferson General Hospital. The child was suffering with high fever and with complaints of a headache, neck and back pain. The family pediatrician was summoned and blood count and throat culture tests were made. At approximately 12:55 a. m. (February 5th) the child was permitted to return home. Later on that morning, the child was returned to the hospital in a comatose, or unconscious state. Meningitis was diagnosed and the child was hospitalized until February 13, 1975, when he died.
The allegations of the petition, upon which plaintiff bases her claim against the hospital, are as follows:
". . . Upon arrival, the doctors present, made defendants herein, were advised of the symptoms and an examination was made. Certain tests were run and sent to the hospital laboratory. Your petitioner was then advised to take the child back home to await results. At no time was your petitioner suggested to leave the child in the hospital overnight for observation . . ."
Plaintiff further alleges that because of the negligence of it's agents, (the emergency room physician and the family pediatrician, who saw the child on the night of February 4th) the hospital is vicariously liable. No allegations are made that these doctors are employees under the supervision of the hospital. In the following paragraph of her petition, plaintiff alleges that the child died as a result of the negligence of the hospital's agents and employees who *1350 failed to promptly furnish the attending physicians with the test results.
We consider, first, the claim against the hospital based on the negligence of the emergency room physician and the pediatrician. Simply put, plaintiff contends the two attending physicians are agents of the hospital; that their negligence resulted in the wrongful death of the minor child, and, under the theory of respondeat superior, the hospital is liable.[2]
Attached to defendant's motion for summary judgment is an affidavit of the assistant administrator of the hospital in which he states the emergency room physicians are not agents or employees of the hospital and that the hospital has no authority to oversee or supervise the exercising of the professional medical judgments of the emergency room physicians. The affidavit goes on to state that the physician on duty in the emergency room, on February 4th, was a member or employee of a professional medical corporation with which the hospital had contracted to perform emergency room services.
Also attached to the motion for summary judgment is the contract between the hospital and the corporation which provides that emergency room services at the hospital are to be performed by physicians who are members or employees of the corporation, an independent contractor. Included in the contract is a disclaimer which states that the agents or employees of the corporation furnishing the emergency room physicians to the hospital are not to be construed as agents or employees of the hospital. The contract requires the corporation to furnish physicians in the emergency room on a twenty-four hour basis and to provide highest professional and ethical services. No provision is contained in the contract for control or supervision over the emergency room physicians by the hospital; however, the contract requires that the emergency room physicians be members of the hospital staff and the hospital reserves the right to designate removal of individual physicians from the emergency service. Significantly, we point out that plaintiff has not filed any countervailing affidavits or documents.
When a motion for summary judgment is supported by affidavits or other sworn supported documents, an adverse party may not rely solely on the allegations contained in his pleading. See C.C.P. 967. Well established also, is the rule that a principal is not liable for the torts of a non-servant agent, but as a master or employer, he is liable for the tortious conduct only of his servants or employees, when that conduct is within the scope of the employment. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (La.1968); Ocmond v. Eserman, 259 So.2d 600 (4th Cir. 1972), writs refused 261 La. 825, 261 So.2d 230 (1972). According to the Louisiana Supreme Court in Savoie v. Fireman's Fund Insurance Co., 347 So.2d 188 (La.1977) an important element to be considered in determining whether an employment relationship exists, is the control and supervision exercised. Also subject for scrutiny is the economic relationship and arrangements between the parties. Blanchard v. Ogima, supra.
When the affidavit of the Assistant Superintendent of the hospital and the contract between the hospital and the corporation, are considered, and in the absence of countervailing affidavits or supporting documents by plaintiff, we conclude, that as a matter of law no liability exists on the part of the hospital in this case, under the theory of respondeat superior, for alleged negligent acts of the assigned emergency room physician.
*1351 The petition, as it relates to the summoned family pediatrician, alleges that he is "an agent" of the hospital. No allegation is made that this physician is an employee of the hospital, under the hospital's supervision and control. Although the affidavit of the Assistant Administrator of the hospital did not make mention of this physician's relationship with the hospital, other documents made part of the record, which we consider for purposes of the motion for summary judgment, support a conclusion that no liability exists on the part of the hospital, under the theory of the respondeat superior, for the family pediatrician's action.
In this connection, in an answer made by the attorney for the hospital to interrogatories propounded to the hospital, he states that the pediatrician was not an employee of the hospital. Furthermore, plaintiff's deposition in which she indicates (although not clear from the deposition) the child had been receiving pediatric services from Rothschild Clinic and that the pediatrician was affiliated, in some way, with the clinic negates any contention that this physician was an employee of the hospital, under the hospital's supervision.
Next, we consider plaintiff's claim against the hospital, based on the apparent allegations that employees of the hospital failed to properly notify the attending physicians of the results of the tests. We conclude again, that the hospital is entitled to a summary judgment. Plaintiff's allegations, in this regard, are vague and indefinite. No specific allegation is made that the results of the reports were not furnished to the physicians by the hospital employees; however, the allegations indicate a supposition that this is the basis upon which liability is sought to be assessed against the hospital. Nevertheless, a pathologist at East Jefferson General Hospital, in an affidavit attached to defendant's motion for summary judgment, asserts that the results of the blood count were reported on February 4, 1975 at 11:46 p. m. prior to the child's release from the hospital; and, further, because of the nature of the throat culture test, it was not possible to report this test result prior to the child's leaving the emergency room on February 4th. According to the affidavit, the time necessary for sufficient propagation is between twelve and seventy-two hours. No response was made by plaintiff to this affidavit. Plaintiff failed to file any countervailing affidavits. In plaintiff's deposition, however, she states:
"Q. What is it that you contend that the hospital as opposed to the doctor did wrong in this situation?
A. The hospital?
Q. Yes, you've sued the hospital, too, haven't you?
A. The test that was done.
Q. Pardon?
A. About the test, the results of the test.
Q. What about the results of the test?
A. They didn't get them till the next day.
Q. You're talking about the blood work and the throat culture?
A. Yes."
We do not interpret these depositions in the nature of a response, as required under C.C.P. 967, when a motion for summary judgment is filed together with supporting documents.[3]
Assuming, however, that the deposition is a response to the hospital's motion, the deposition is fatal because it does not state "specific facts" showing that there exists a "genuine" issue for trial. The deposition fails to state a basis for plaintiff's supposition that the report of the blood count was not promptly made available by the hospital to the attending physicians. Under the circumstances, we conclude the motion for *1352 summary judgment dismissing the hospital was properly granted. The judgment is affirmed.
AFFIRMED.
NOTES
[1] An intervention, filed by the father of the minor child, divorced from the plaintiff, was also dismissed by summary judgment.
[2] Art. 2320. Acts of servants, students or apprentices

Art. 2320. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
[3] C.C.P. 967 in pertinent part provides:

"When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him."