Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,770-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ERIC SOUTH, KESIA SOUTH                    Plaintiffs-Appellants
AND LATRICIA SOUTH,
INDIVIDUALLY AND ON
BEHALF OF THEIR DECEASED
FATHER, CHARLES SOUTH

versus

DR. LARRY THOMAS OLINDE                    Defendants-Appellees
AND DR. PAUL MICHAEL
PETTY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-0987

Honorable Jefferson B. Joyce, Judge

* * * * *

ROZAS LAW FIRM, LLC                        Counsel for Appellants
By: Greg A. Rozas
    Paul J. Tanner

MCNEW, KING, & LANDRY, LLP                 Counsel for Appellee,
By: Brady K. King, II                      Dr. Larry T. Olinde

FRILOT, LLC                                Counsel for Appellee,
By: John B. Cazale                         Dr. Paul Michael Petty
    Halley S. Carter

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

The three children of Charles South appeal a judgment that sustained exceptions of prescription filed by Dr. Larry Olinde and Dr. Paul Petty and dismissed the Souths' medical malpractice action arising from the death of their father. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

South was a kidney failure patient going to dialysis three times a week at Fresenius Kidney Care-Winnsboro. On his visit of October 18, 2017, attendants found a "concerning area" above his dialysis port, on his left thigh, which placed him at imminent risk of an aneurysm; they advised him to go to an emergency room. The plaintiffs took him to St. Francis Medical Center, in Monroe, the next day, where the ER physician told him to contact a general surgeon. They could not reach the general surgeon, so the next day, October 19, they drove him back to St. Francis.

The ER physician on duty that day was Dr. Petty, who found mild bleeding at the site; he called in a nephrologist, Dr. Olinde. Dr. Olinde operated, to insert a tunnel catheter in South's right jugular vein, and sent him home to resume regular dialysis. Unfortunately, on October 22, 2017, the untreated aneurysm ruptured, and South bled to death.

## PROCEDURAL HISTORY

The plaintiffs filed a medical review panel ("MRP") complaint on July 2, 2018, against Fresenius-Winnsboro and St. Francis. Over three years after the alleged malpractice, on December 16, 2020, they filed an amended complaint, to add Drs. Olinde and Petty, who had provided medical care to South at St. Francis. The amended complaint alleged not that Drs. Olinde

and Petty were employees of St. Francis, but only that they were "jointly and severally liable with" it.

On February 24, 2022, the MRP rendered its decision, finding no deviation from the standard of care by Fresenius or St. Francis, but finding a deviation by Drs. Olinde and Petty. The decision, however, did not mention whether the panel considered Drs. Olinde and Petty employees of St. Francis.

The plaintiffs filed this suit, in the Fourth JDC, on March 25, 2022, alleging medical malpractice against Drs. Olinde and Petty. The petition did not allege that they were employees of St. Francis; in fact, it did not mention St. Francis at all.

Dr. Petty responded with an exception of prescription urging that the plaintiffs did not join him in the MRP complaint until over three years after the alleged conduct, making the claim untimely under La. R.S. 9:5628. He conceded they filed a timely claim against St. Francis, but asserted he was not an employee of St. Francis, and even if he had been, St. Francis was found not to be an obligor; hence, there could be no joint and several liability under R.S. 40:1231.8 (A)(2)(a). Dr. Olinde later filed his own exception of prescription, adopting Dr. Petty's positions.

The plaintiffs moved for leave of court to amend their petition to join Fresenius-Winnsboro and St. Francis as defendants. In a subsequent memo, they argued that Dr. Petty was an ER physician at St. Francis, and thus he was an employee.

Both doctors opposed the plaintiffs' motion for leave to amend. In support, Dr. Petty filed a copy of an employment agreement between himself and Island Medical SP, designating Island Medical as the employer, Dr.

2

Petty as the employee, and describing his duties as assistant medical director of the St. Francis ER.

The court held a hearing on the doctors' exceptions of prescription and the plaintiffs' motion for leave to amend on July 19, 2023. After argument, the court took the matter under advisement and gave the parties an additional 14 days to file any further documents.

Over 14 days later, the plaintiffs filed a copy of an emergency medical services agreement between Pegasus Emergency Group and St. Francis, whereby St. Francis contracted out its emergency department to Pegasus. The doctors objected to this evidence as untimely and reiterated their argument about prescription.

## ACTION OF THE DISTRICT COURT

On August 29, 2023, the district court issued written reasons. The court denied the plaintiffs' motion for leave to amend, finding that they were fully aware of the part played by St. Francis, but chose to sue only the doctors, and did not try to join St. Francis until after the 90-day window of R.S. 40:1231.1 (A)(2)(a). The court then evaluated the two agreements – Island Medical's employment agreement with Dr. Petty and Pegasus's emergency medical services agreement with St. Francis – and found "it is definite that the physicians are not employees of the hospital, [and] therefore, cannot be joint tortfeasors."

The court later rendered judgment sustaining both exceptions of prescription and dismissing all claims. The plaintiffs appealed.

## APPLICABLE LAW

No action for damages for injury or death against any physician, whether based on tort, or breach of contract, or otherwise, arising out of

3

patient care shall be brought "unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect[.]" However, even as to claims filed within one year from the date of such discovery, "in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." La. R.S. 9:5628 (A).

Further, all malpractice claims against qualified healthcare providers shall be reviewed by a medical review panel as provided for in the La. Medical Malpractice Act ("LMMA"). La. R.S. 40:1231.8 (A)(1)(a). The Act also provides, in R.S. 40:1231.8 (A)(2)(a) (with *emphasis added*):

> The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification * * * of the opinion of the medical review panel[.] * * * The filing of a request for review of a claim shall suspend the running of prescription against *all joint and solidary obligors, and all joint tortfeasors,* * * * to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. * * *

The specific provisions of LMMA regarding suspension of prescription against joint tortfeasors apply to the exclusion of general code articles regarding suspension of prescription, such as La. C.C. art. 2324 (C). *Borel v. Young*, 07-0419 (La. 11/27/07), 989 So. 2d 42. Nevertheless, filing a claim under R.S. 40:1231.8 (A)(2)(a) cannot revive a prescribed claim. *Cooper v. Ruston La. Hosp. Co. LLC*, 55,014 (La. App. 2 Cir. 4/5/23), 361 So. 3d 1100.

A joint obligation is one in which "different obligors owe together just one performance to one obligee, but neither is bound for the whole[.]" La. C.C. art. 1788. By contrast, a solidary obligation is one in which "each obligor is liable for the whole performance." La. C.C. art. 1794. The

4

interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs. La. C.C. art. 1799. However, solidarity of obligation shall not be presumed. It must arise "from a clear expression of the parties' intent or from the law." La. C.C. art. 1796. Solidary liability occurs only when one person conspires with another person to commit an intentional or willful act. La. C.C. art. 2324 (A). In all other instances, liability for damages caused by two or more persons shall be a "joint and divisible obligation." La. C.C. art. 2324 (B).

Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. La. C.C. art. 2320; *Woolard v. Atkinson*, 43,322 (La. App. 2 Cir. 7/16/08), 988 So. 2d 836. Hence, the liability of an employer and its employee for the tort committed in the course and scope of employment would be joint and divisible.

The liability of Art. 2320 attaches only when there is an employment relationship. An independent contractor who commits a tort in the performance of his duties does not generally make the principal liable. *Hillman v. Comm-Care Inc.*, 01-1140 (La. 1/15/02), 805 So. 2d 1157; *Hopper v. Austin*, 49,628 (La. App. 2 Cir. 3/4/15), 163 So. 3d 8. Determining whether a person is an employee or an independent contractor is on a case-by-case basis, with the chief consideration being whether the purported employer has the right to control the method and means by which the individual performs the work tasks. *Hillman v. Comm-Care*, *supra*.

When evidence is considered on the merits of an exception of prescription and factual determinations are made, the manifest error standard

5

of review is applied. *In re Med. Review Panel of Heath*, 21-01367 (La. 6/29/22), 345 So. 3d 992; *Cooper v. Ruston La. Hosp. Co.*, *supra*.

## THE PLAINTIFFS' POSITION

The plaintiffs assert one assignment of error: the court erred in granting the doctors' exceptions of prescription. They contend prescription was interrupted by the timely suit against the doctors' employer, St. Francis. They concede the standard of review is manifest error, *Mitchell v. Baton Rouge Orthopedic Clinic LLC*, 21-00061 (La. 10/10/21), 333 So. 3d 368. They also show the one- and three-year limitations of R.S. 9:5628 are prescriptive, not peremptive, and may be interrupted by timely suit, *Borel v. Young*, *supra*. They then advance three arguments.

First, they contend a master-servant relationship existed between St. Francis and the doctors. They argue the parties' designation of the relationship is not dispositive, *Prater v. Porter*, 98-1481 (La. App. 3 Cir. 3/3/99), 737 So. 2d 102, and the true measure is the degree of control exercised by the principal over the contractor and his work, *Hickman v. S. Pacific Transp. Co.*, 262 La. 102, 262 So. 2d 385 (1972). They concede that "most physicians are considered independent contractors," but argue it is "accepted law that the emergency room situation is unique." They urge that, "for all intents and purposes," Drs. Petty and Olinde were employees of St. Francis and were acting in the course and scope of their employment. In support, they cite *Campbell v. Hosp. Serv. Dist. No. 1*, 33,874 (La. App. 2 Cir. 10/4/00), 768 So. 2d 803, *writ denied*, 00-3153 (La. 1/12/01), 781 So. 2d 558; *Suhor v. Medina*, 421 So. 2d 271 (La. App. 4 Cir. 1982); *Prater v. Porter*, *supra*; *Arrington v. Galen-Med Inc.*, 02-987 (La. App. 3 Cir. 2/5/03), 838 So. 2d 895; and *Hastings v. Baton Rouge Gen'l Hosp.*, 498 So. 2d 713

6

(La. 1986). They contend that the third-party vendor contracts are merely an attempt to shield the hospital from liability for the acts of its ER doctors; they also quote various passages from the Island Medical employment agreement that purportedly show St. Francis's control over Dr. Petty's work schedule, its exclusive provision of medical support, facilities, and equipment, its final say over which doctors may practice in its ER, and its designation of Dr. Petty as a statutory employee for purposes of workers' compensation. They conclude this proved, by a preponderance, that the true nature of the relationship was employment.

Second, they argue the concept of vicarious liability, La. C.C. art. 2320: their allegations of negligence against St. Francis were based on the actions of Drs. Olinde and Petty; hence, the MRP complaint against St. Francis interrupted prescription against the doctors. In support, they cite *Gettys v. Wong*, 13-1138 (La. App. 4 Cir. 5/7/14), 145 So. 3d 360, 308 Ed. L. Rep. 547, for the parallel rule that filing a timely action against the physician interrupts prescription against the physician's employer.

Third, they assert that the policy of the law is to favor the assertion of tort claims; hence, LMMA and prescriptive statutes are to be narrowly construed, *Kelty v. Brumfield*, 633 So. 2d 1210 (La. 1994); *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992). They submit that the court's ruling subverts these policies and ask the court to reverse the rulings on the exceptions.

## DISCUSSION

The crux of the case is whether the plaintiffs' timely MRP request against St. Francis interrupted prescription as to Drs. Olinde and Petty, and thus validated the untimely MRP request against the doctors. As noted, timely suit against one *solidary obligor* interrupts prescription against all

7

other solidary obligors, La. C.C. art. 1799.  However, R.S. 9:5628 (A)(2)(a) refers to healthcare providers who concurrently breach the standard as "all joint tortfeasors," and does not establish solidary liability.  Solidarity cannot be presumed, C.C. art. 1796, and there is no suggestion, much less evidence, that the doctors conspired with St. Francis to commit an intentional or willful act, La. C.C. art. 2324 (A).  In short, the plaintiffs cannot succeed on the theory of solidarity.

The alternative theory is that the doctors were joint tortfeasors with St. Francis, and thus subject to the interruption rule of R.S. 9:5628 (A)(2)(a).  This relationship would occur, under C.C. art. 2320, if they were employees of St. Francis.  The issue was addressed at a hearing in which evidence was introduced; hence, the standard of review is manifest error.  *In re Med. Review Panel of Heath*, *supra*.  As noted, the plaintiffs concede in brief that "most physicians are considered independent contractors," and this assumption is borne out by their pleadings.  Their timely MRP complaint named only Fresenius and St. Francis; over two years later, they amended this to add the doctors.  Much later, after the MRP absolved Fresenius and St. Francis, the plaintiffs filed this petition, naming only Drs. Olinde and Petty, but not alleging any connection with St. Francis (or even mentioning it by name).  These circumstances support the district court's finding of an independent contractor status.

The evidence offered at the hearing on the exception does little to support a contrary finding.  Dr. Petty's employment contract with Island Medical describes him as an employee of Island Medical, not of St. Francis, and the Pegasus emergency medical services agreement shows that St. Francis contracted out the operation of its ER.  On the critical issue of

8

control, there is no showing that the doctors yielded to St. Francis the "methods and means" of providing medical services; these documents confirm the doctors' medical discretion. Moreover, some of the attributes of control apparently exercised by St. Francis are, in fact, legal requirements, such as credentialing (R.S. 40:2114 (E)), records retention (48 La. Adm. C. Pt. I, § 9376), and declarations of status for workers' compensation purposes (La. R.S. 23:1061 (A)(2)). These provisions do not alter the doctors' status as independent contractors.

We have closely considered the cases cited by the plaintiffs, and they all present the issue of distinguishing between an employee and an independent contractor. However, *Campbell v. Hosp. Serv. Dist. No. 1*, *Suhor v. Medina*, and *Prater v. Porter*, *supra*, all arose in the context of a motion for summary judgment and found that genuine issues of material fact precluded drawing any legal conclusion. Similarly, *Hastings v. Baton Rouge Gen'l Hosp.*, *supra*, was a directed verdict on the issue of liability, which the Supreme Court reversed by finding sufficient evidence of a jury question. By contrast, on the exception of prescription the court is free to assess the evidence, draw reasonable inferences, and make factual findings, all subject to manifest error review. In *Arrington v. Galen-Med Inc.*, *supra*, the jury found evidence to supersede a physician service provider agreement that designated an ER doctor as an independent contractor; similar evidence is simply not present in the instant case.

A more apposite case would be *Johnson v. Ruston La. Hosp. Co. LLC*, 54,258 (La. App. 2 Cir. 8/10/22), 345 So. 3d 464, *writ denied*, 22-01378 (La. 11/22/12), 350 So. 3d 503, in which the alleged malpractice occurred on January 7, 2015. The plaintiffs filed a timely MRP request, January 4, 2016,

9

against the hospital "and its employees." Much later, in October 2017, they moved to amend their request to add Dr. Arena, an anesthesiologist who was in the ER and allegedly rendered treatment to the patient but was not a hospital employee. After the MRP absolved all defendants, the plaintiffs sued the hospital and Dr. Arena, who responded with an exception of prescription. The district court sustained the exception, and this court affirmed. We concluded that the timely MRP request against the hospital "and its employees" did not interrupt prescription against Dr. Arena, who was an independent contractor. The same reasoning applies here.

Finally, as to the plaintiffs' policy arguments, we agree that prescriptive statutes are to be strictly construed against prescription and in favor of the claim sought to be extinguished. *Stevenson v. Progressive Sec. Ins. Co.*, 19-00637 (La. 4/3/20), 341 So. 3d 1202; *Minor v. Monroe Surgical Hosp. LLC*, 49,367 (La. App. 2 Cir. 11/19/14), 154 So. 3d 665, 39 IER Cases 766, *writ denied*, 14-2667 (La. 3/13/15), 161 So. 3d 641. If there are two possible constructions, the one which favors maintaining, as opposed to barring an action should be adopted. *Id.*; *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261. Similarly, the limitations of liability imposed by LMMA are in derogation of the rights of tort victims and must be strictly construed. *Borel v. Young*, *supra*; *Wendling v. Riverview Care Ctr. LLC*, 54,958 (La. App. 2 Cir. 4/5/23), 361 So. 3d 557. However, the plaintiffs have not offered an alternative construction that would amend 40:1231.8 (A)(1)(a) from "joint tortfeasors" into solidary obligors or convert an independent contractor into an employee of the hospital where he works under contract with an independent provider. It is notable that the plaintiffs never alleged that Drs. Olinde and Petty were employees of St. Francis until

10

after the MRP absolved the hospital. There is no explanation why they were not joined timely. We perceive no abuse of the district court's discretion.

## CONCLUSION

For the reasons expressed, the judgment sustaining the exceptions of prescription is affirmed. All costs are to be paid by the plaintiffs, Eric South, Kesia South, and Latricia South, individually and on behalf of their deceased father, Charles South.

**AFFIRMED**.

11